UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CR-06-58-B-W-01 |
| | ) | |
| MICHAEL PELLETIER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON MOTION FOR A JUDGMENT OF ACQUITTAL**

Because the evidence at trial, when viewed in the light most favorable to the government, is sufficient to sustain the jury's guilty verdicts on all counts, including its finding that the amount of marijuana properly attributable to Michael Pelletier exceeds 1000 kilograms, the Court denies Mr. Pelletier's Rule 29 motion for acquittal.

**I.    STATEMENT OF FACTS**

On July 19, 2007, a jury found Michael Pelletier guilty of twelve separate violations of federal criminal law, including drug trafficking, money laundering, structuring, and social security fraud.  *Jury Verdict* (Docket # 280).  On July 25, 2007, Mr. Pelletier moved for a judgment of acquittal on all counts.  *Def.'s Mot. for J. of Acquittal* (Docket # 287).  Alleging that "the evidence presented by the government is insufficient to support the criminal offenses charged," he states that "[t]his is particularly true with respect to the weight of marijuana found by the jury to have been imported and distributed."  *Id.* at 1.  In finding Mr. Pelletier guilty of the drug offenses, the jury found he was responsible for 1000 or more kilograms of marijuana.  Mr. Pelletier's main contention is that the evidence is insufficient to support the drug quantity determination.

## II.     DISCUSSION

### A.     Legal Standard

The familiar standard for a Federal Rule of Criminal Procedure 29 motion is "viewing the evidence in the light most favorable to the government . . . whether a rational jury could find the defendant guilty beyond a reasonable doubt." *United States v. Tierney*, 266 F.3d 37, 40 (1st Cir. 2001); *United States v. Reeder*, 170 F.3d 93, 102 (1st Cir. 1999). "Because credibility determinations are the province of the jury, [the court] ordinarily decline[s] invitations to second-guess jury decisions about the credibility of particular testimony and make[s] all credibility choices in favor of the verdict." *Tierney*, 266 F.3d at 40 (internal punctuation and citation omitted). Evidence supporting a verdict "need not be direct, but may be circumstantial in nature," and "[w]here there is sufficient evidence, on the whole, to support the judgment of conviction, a jury is entitled to reject even plausible theories of innocence, and [the court is] required to affirm the jury verdict." *Id.* The same legal standard applies when a trial court is reviewing the matter as when the case is before the appellate court. *United States v. Olbres*, 61 F.3d 967, 970 (1st Cir. 1995). In short, a court must determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Azubike*, No. 06-2255, 2007 U.S. App. LEXIS 22524, at *15 (1st Cir. Sept. 21, 2007) (quoting *United States v. Olivo-Infante*, 938 F.2d 1406, 1409 (1st Cir. 1991)).

### B.     Evidence of Drug Quantity

The evidence at trial established that Mr. Pelletier was the central figure in a marijuana distribution operation located in northern Maine near the Canadian border. Marijuana was obtained in Canada, smuggled across the border, and sold in the United States. A primary witness against Mr. Pelletier was Adam Hafford, a man Mr. Pelletier met in prison and recruited

to help smuggle marijuana. *Trial Tr.* (July 16, 2007) at 67:12-24 (Docket # 308). Mr. Hafford testified that in June 2004, after he got out of prison, he contacted Mr. Pelletier, who described a scheme whereby Mr. Hafford would periodically travel to Canada, pick up marijuana in duffel bags, and swim the marijuana across the St. John River into the United States for delivery. *Id.* at 71:14-72:25. Mr. Pelletier told Mr. Hafford that he would be swimming about sixty pounds of marijuana per trip across the river. *Id.* at 72:8-11. Mr. Hafford testified that he agreed to the scheme and within about a week, he began to swim the marijuana across the St. John River. *Id.* at 73:5-10.

The first night after arriving in Canada, Mr. Hafford was given two duffel bags filled with marijuana, each weighing thirty pounds. *Id.* at 74:21-75:1. After successfully swimming the two duffel bags across the St. John River, Mr. Hafford swam across the river every week or two from June until November 2004, each time with at least sixty pounds of marijuana. *Id.* at 82:5-15. Mr. Hafford estimated that he brought over between 1000 and 1500 pounds of marijuana during this time.[1] *Id.* at 83:4-11. The jury is entitled to accept the higher estimate and, based on Mr. Hafford's testimony alone, he smuggled 680.38 kilograms of marijuana across the St. John River to Mr. Pelletier.[2]

Mr. Hafford took over the swimming operation from a man named Michael Easler. Mr. Hafford testified that he met Mr. Easler in prison and that Mr. Easler told him that he had swum across the St. John River for Mr. Pelletier, carrying sixty pounds of marijuana each trip. *Id.* at 115:17-25. According to Mr. Hafford, Mr. Easler said that he started in the springtime and

---

[1] Mr. Pelletier asserts that because Mr. Hafford testified that he was dealing marijuana on the side during some part of the conspiracy, the jury could be ascribing to Mr. Pelletier amounts that Mr. Hafford brought over for himself and, further, that the true amount of marijuana properly attributable to Mr. Pelletier is speculative. Mr. Pelletier is incorrect. Mr. Hafford testified that his estimate of the amount of marijuana he brought over for Mr. Pelletier did not include the marijuana he brought over for himself. *Trial Tr.* (July 16, 2007) at 83:4-13 (estimating that he brought over between 1000 and 1500 pounds of marijuana "[p]lus some of my own . . . .").

[2] One pound equals 0.4535924 kilograms. Thus, 1500 pounds equals 680.38 kilograms.

continued until there was ice in the water. *Id.* at 116:1-4. A jury could have rationally concluded that Mr. Easler was involved in smuggling marijuana for Mr. Pelletier during the year before Mr. Hafford took over the job. The jury could have added to the drug smuggling total an amount equal to the amount Mr. Hafford smuggled in 2004, and the total would therefore double to 1360.76 kilograms, more than the 1000 kilogram level that the jury found.

In addition, there was evidence that Mr. Easler had stolen a huge amount of money from Mr. Pelletier and that this cash represented smuggled marijuana.[3] In fact, when Mr. Pelletier hired Mr. Hafford to swim marijuana across the river, he gave him the option of another job: finding Michael Easler. *Id*. at 70:4-23. Mr. Pelletier told Mr. Hafford that Mr. Easler had stolen $310,000.00 from him and he wanted him found and brought to the Pelletier woodlot. *Id.* Mr. Easler's theft of a substantial sum of money from Mr. Pelletier was confirmed by Mr. Easler's girlfriend, Erika Fox, who testified that she was present when Mr. Easler smuggled an enormous amount of cash, duct-taped to his body, from Canada to the United States in the spring of 2004.[4] *Trial Tr.* (July 13, 2007) at 116:4-117:8 (Docket # 302). Mr. Easler told Ms. Fox that he had a quarter of a million dollars strapped to his body. *Id.* at 117:3-8. Finally, the theft was confirmed by both Dan Easler, Michael Easler's brother, who testified that Michael Easler told him that he had stolen a large amount of money from Michael Pelletier, *Trial Tr.* (July 17, 2007) at 20:9-21 (Docket # 311), and by John Parker, who testified that Mr. Pelletier told him that Mr. Easler had

---

[3] Mr. Pelletier also claims that there is no evidence that this cash was for marijuana or that the cash was Mr. Pelletier's. This is simply incorrect. In view of the evidence, a jury could reasonably conclude that this large sum of cash was directly connected to the marijuana smuggling operation. Further, the record is replete with evidence that the cash was Mr. Pelletier's, including the chilling testimony from Erika Fox, Michael Easler's girlfriend, that she and her two-year-old son were accosted and threatened in the middle of the night at gun point in her apartment by a group of five men, including Roger (a person she recognized as being Michael Easler's Canadian contact). One said: "The boy with no legs wants his money." *Trial Tr.* (July 13, 2007) at 153:4-6. Ms. Fox reasonably thought this remark referred to Michael Pelletier, who is confined to a wheelchair.

[4] The timing of this occurrence is inexact, but insignificant for purposes of this motion, except that Mr. Easler had been smuggling marijuana for Mr. Pelletier before Mr. Hafford took his place.

stolen "some 300-odd thousand dollars" from him. *Trial Tr.* (July 18, 2007) at 125:12-20 (Docket # 312).

Translating this sum of money to a drug quantity requires knowledge of the amount of money Mr. Pelletier paid per pound of marijuana. According to Mr. Hafford, Mr. Pelletier paid $1000 per pound. *Trial Tr.* (July 16, 2007) at 84:3-5. If Mr. Easler stole between $250,000 and $310,000 from Mr. Pelletier, the amount of marijuana that this cash represents is between 250 and 310 pounds. The resulting quantity is between 113.39 and 140.61 kilograms.[5] The 140.61 kilogram figure represented by the cash Mr. Easler stole could be added to the earlier figure of 1360.76 kilograms to equal 1501.37 kilograms.[6]

Finally, the jury's finding that the amount of marijuana attributable to Mr. Pelletier exceeded 1000 kilograms is wholly consistent with abundant evidence that Mr. Pelletier had substantial amounts of cash that were incompatible with his known legitimate sources of income. Although not determinative of a particular quantity of marijuana, the evidence of significant sums of cash that formed the underpinnings of the convictions for money laundering, structuring, and social security fraud is circumstantial evidence from which a jury could have found that Mr. Pelletier had been engaged in a long term criminal conspiracy to import and distribute large quantities of marijuana.

## III.   CONCLUSION

The Court DENIES Michael Pelletier's motion for acquittal. (Docket # 287).

---

[5] The Court recognizes that there is a potential disparity in both the amount of cash stolen from Mr. Pelletier and the cost of marijuana per pound. Again, in the context of a Rule 29 motion, all evidence is viewed "in the light most favorable to the government," *Tierney*, 266 F.3d at 40 (internal citation omitted), so the Court will consider the higher figure.

[6] The seasonal timing of the Easler theft is strong circumstantial evidence that the cash was not for the same marijuana that Mr. Easler had swum across the river from the spring to the fall of 2003. Mr. Easler stole this money in the early spring of 2004. The temporal gap between late fall 2003 and early spring 2004 would allow a jury to conclude that the money Mr. Easler stole in the spring was not for the same marijuana he had swum across the river, therefore there is no double counting.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 16th day of October, 2007