UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 1:06-cr-00058-JAW-01 |
| | ) | |
| MICHAEL PELLETIER | ) | |

## ORDER ON DEFENDANT'S MOTION TO REDUCE RESTITUTION, MOTION FOR RETURN OF PROPERTY, AND MOTION FOR SENTENCE REDUCTION

A criminal defendant was tried and convicted of Social Security Fraud and conspiring to import and distribute marijuana, among other things. The defendant moves to reduce the amount of restitution he owes the Social Security Administration, for the return of certain property subject to forfeiture, and for a reduction in his sentence. The Court denies the motions because it correctly imposed these penalties and, if not, the Court does not have the power to alter the defendant's final criminal sentence more than ten years after it was imposed.

## I. PROCEDURAL BACKGROUND

On September 7, 2006, a federal grand jury indicted Michael Pelletier for conspiring to import and distribute marijuana, Social Security fraud, money laundering, and structuring. *Indictment* (ECF No. 1). At the arraignment, on September 15, 2006, Mr. Pelletier pleaded not guilty on all counts. *Minute Entry for Arraignment Proceeding* (ECF No. 71).

From July 12 to July 19, 2007, Mr. Pelletier was tried before a jury. *Trial Tr.* (ECF. No. 302, 307-308, 311-12, 335, 338-39, 399-400, 406, 411-13, 518-19). The

Government produced documentary and testimonial evidence that Mr. Pelletier had knowingly failed to disclose any employment or income while receiving benefits from approximately 1977 through 2006. *See Trial Tr.* at 176:8-177:18 (ECF No. 413).

On July 19, 2007, Mr. Pelletier was found guilty on all counts, with the exception of one of the money laundering counts, which the Government dropped. *See Jury Verdict* (ECF No. 280). The jury found that the conspiracy involved the distribution of 1,000 kilograms or more of marijuana. *Id.* (Count 2). This finding—combined with Mr. Pelletier's prior convictions—made him subject to a statutorily mandated life sentence. *See* 21 U.S.C. § 841(b)(1)(A) ("If any person commits a violation of this subparagraph . . . after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release . . . ."); U.S.S.G. § 5G1.1(b) ("Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence").

On January 22, 2008, the Court sentenced Mr. Pelletier to life in prison, and ordered him to pay restitution. *Min. Entry* (ECF No. 382). On January 23, 2008, the Court entered the judgment against Mr. Pelletier, including a restitution amount of $83,847.55 to the Social Security Administration. *J.* (ECF No. 384). On February 5, 2008, the Court, as permitted by Federal Rule of Criminal Procedure 36, twice amended the judgment to correct clerical mistakes. *Amended J.* (ECF No. 388); *Second Amended J.* (ECF No. 390). The Court, after assessing Defendant's ability to pay, ordered immediate payment of the $83,847.55 restitution obligation in a lump

sum. *Second Amended J.* at 6-7 (ECF No. 390). The Court provided that any amount Mr. Pelletier was unable to pay immediately was due and payable during his term of incarceration. *Id.* Mr. Pelletier's counsel stated that he had no objection following the Court's statement during sentencing that Mr. Pelletier's "[r]estitution is mandatory in the amount of $83,847.55." *Sentencing Tr.* at 16:8-15 (ECF No. 521).

The Court also ordered forfeiture of several pieces of real and personal property, including several automobiles. *Final Order of Forfeiture* (ECF No. 383); *Second Amended J.* (ECF No. 390). One such piece of real property was located at 574 Main Street, Van Buren, Maine ("the Property"). *Id.* That property consisted of an automotive shop and upstairs residence that Mr. Pelletier purchased for $19,000. *Id.*; *Trial Tr.* at 56:14-69:6 (ECF No. 412). During the charge conference at the close of trial, the Government stated that it intended to dismiss Count Four, the money-laundering charge pertaining to the Property, but the Property remained relevant to forfeiture based on the drug charges contained in Counts One and Two because evidence showed that the money used to purchase and improve that property "was drug money." *Trial Tr.* at 28:14-33:20 (ECF No. 413). Defense counsel did not object. *Id.* The Jury returned a verdict in favor of forfeiture of the Property based on its finding that the Property was derived from proceeds Mr. Pelletier obtained from his involvement in the drug offenses in Counts One and Two of the indictment for which he had been convicted. *Verdict Form* at 1 (ECF No. 281).

On January 29, 2008, Mr. Pelletier appealed his conviction based on evidentiary issues, jury instructions, and the sufficiency of the evidence, but he did

not appeal the forfeiture order or the restitution amount. *Notice of Appeal* (ECF No. 385); *United States v. Pelletier*, 666 F.3d 1 (1st Cir. 2011). On December 1, 2011, The United States Court of Appeals for the First Circuit affirmed Mr. Pelletier's conviction. *Pelletier*, 666 F.3d at 12. The United States Supreme Court denied Mr. Pelletier's petition for a writ of certiorari and his petition for rehearing. *Pelletier v. United States*, 132 S. Ct. 2683 (2012); *Pelletier v. United States*, 133 S. Ct. 92 (2012).

On May 30, 2013, Mr. Pelletier filed a motion under 28 U.S.C. § 2255 arguing that he was illegally detained and sentenced. *Pet'rs' Mot. to Vacate, Correct, or Set Aside an Illegal Sentence Pursuant to 28 U.S.C. § 2255* (ECF No. 682). On June 17, 2014, the Magistrate Judge issued a recommended decision in which he recommended that the § 2255 petition be denied. *Recommended Decision on 28 U.S.C. § 2255 Mot.* (ECF No. 712). On July 28, 2014, Mr. Pelletier objected to the recommended decision. *Movant's Objs. to the Magistrate Judge's R. & R.* (ECF No. 715). On December 29, 2014, Mr. Pelletier filed a motion to supplement his § 2255 petition and the Court granted his motion on December 30, 2014. *Mot. to Supplement* (ECF No. 718). On January 14, 2015, Mr. Pelletier filed a motion to amend his § 2255 motion. *Mot. to Amend Pet.* (ECF No. 722). On February 4, 2015, the Government responded to Mr. Pelletier's motion to amend and supplement his petition. *Resp.'s Obj. to Pet'r's Third Mot. to Amend his Previously Amended and Supplemented 28 U.S.C. § 2255 Pet.* (ECF No. 723). On March 19, 2015, the Government responded to Mr. Pelletier's motion to supplement. *Gov't's Resp. to Pet'r's Supplement to his Thrice-*

*Amended 28 U.S.C. § 2255 Mot.; and Renewed Mot. for Summ. Dismissal* (ECF No. 729).

On April 6, 2015, Mr. Pelletier sought the return of the Property and argued that his restitution obligation should be recalculated to reflect only the amount of Social Security benefits he received within the five-year period preceding his indictment, rather than the whole period since 1977. *Mot. to Supplement* (ECF No. 730). On November 24, 2015, the Court ruled that Defendant's forfeiture and restitution arguments were time-barred and not cognizable in § 2255 proceedings. *Order Affirming the Recommended Decision of the Magistrate Judge* at 12 (ECF No. 733).

On January 26, 2016, Mr. Pelletier appealed the order. *Notice of Appeal* (ECF No. 736). On March 7, 2017, the First Circuit denied his request for a certificate of appealability and terminated his appeal. *Pelletier v. United States*, No. 16-1119 (1st Cir. Mar. 7, 2017) (ECF No. 757).

On March 13, 2017, Mr. Pelletier moved for a reduction of the restitution obligation due to the Social Security Administration. *Mot. to Reduce Restitution* (ECF No. 758) (*Def.'s Restitution Mot.*). On March 20, 2017, the Government responded. *Gov't's Resp. in Opp'n to Def.'s Mot. to Reduce Restitution* (ECF No. 764) (*Gov't Restitution Opp'n*). On April 24, 2017, Mr. Pelletier replied to the Government's response. *Reply to Gov't's Response* (ECF No. 765) (*Def.'s Reply*).

Also on March 13, 2017, Mr. Pelletier moved for the return of the Property. *Rule 41(g) Mot. for Return of Property* (ECF No. 759) (*Def.'s Forfeiture Mot.*). The

Government responded on April 7, 2017. *Gov't Resp. in Opp'n to Def.'s Mot. for Return of Property* (ECF No. 760) (*Gov't Forfeiture Opp'n*). Mr. Pelletier did not reply to the Government's response.

On May 11, 2017, Mr. Pelletier moved for a hearing regarding a reduction of his sentence. *Mot. for Sentence Reduction* (ECF No. 767) (*Def.'s Sentence Mot.*). The Government responded on May 22, 2017. *Gov't Obj. to Def.'s Mot. for Sentence Reduction* (ECF No. 768) (*Gov't Sentence Opp'n*). Mr. Pelletier did not reply to the Government's response.

## II. THE PARTIES' POSITIONS

### A. Motion to Reduce Restitution

#### 1. Michael Pelletier's Motion

Mr. Pelletier argues that the Court's restitution order of $83,847.55 was improper because payments by the Social Security Administration are subject to a five-year statute of limitations. *Def.'s Restitution Mot.* at 1. He cites *United States v. Silkowski*, 32 F.3d 682 (2nd Cir. 1993), in support of this argument. *Id.* He points out that he was receiving less than $500.00 per month in disability benefits, and he concludes that a large portion of his restitution order must have been based on Social Security payments beyond the five-year period preceding his indictment. *Id.*

#### 2. The Government's Response

The Government responds that Mr. Pelletier is not entitled to reduced restitution for three reasons. First, the Government argues that the restitution obligation constitutes a final judgment that cannot now be challenged unless one of

a few narrow exceptions applies. *Gov't Restitution Opp'n* at 4. The Government contends that none of these exceptions applies to Mr. Pelletier's now nine-year-old restitution order. *Id.* at 4-10.

Second, the Government claims that even if the order could be challenged at this late date, the restitution amount was proper. *Id.* at 10. The Government maintains that the Court properly based the restitution amount on the whole thirty year period and was unconstrained by the five-year statute of limitation period of 18 U.S.C. § 3283(a). *Id.* It cites *United States v. Williams*, 356 Fed. App'x 167, 170 (10th Cir. 2009); and *United States v. Brown*, 665 F.3d 1239, 1253 (11th Cir. 2011) for the proposition that defendants must pay restitution for losses occurring outside the statute of limitations period when the offense encompassed a "scheme" extending beyond that period. *Id.* at 10-11. Social Security Fraud under 42 U.S.C. § 408(a)(4), the Government insists, is an offense containing such a scheme. *Id.* at 11. The Government also argues that the restitution order was proper because courts have allowed restitution for conduct closely related to the offense of conviction. *Id.* at 11-12 (citing *Brown*, 665 F.3d at 1252; *United States v. Valladares*, 544 F.3d 1257, 1268-70 (11th Cir. 2008)). The Government portrays *Silkowski* as irrelevant, because it was decided before the enactment of 28 U.S.C. § 3663A in the Mandatory Victims Restitution Act, which now controls the Court's authority to impose restitution. *Id.* at 12.

Third, the Government argues that, to the extent Mr. Pelletier's Restitution Motion can be construed as a § 2255 petition, the relief sought is unavailable. *Id.*

(citing *Order Affirming the Recommended Decision of the Magistrate Judge* (ECF No. 733); *United States v. Chorney*, 453 Fed. App'x 4, 8 (1st Cir. 2011)).

### 3. Michael Pelletier's Reply

Mr. Pelletier's reply focuses on the substantive propriety of the restitution amount and the damage to the fairness, integrity, and public reputation of the judiciary from an unauthorized order. *See Def.'s Reply* at 3 (quoting *United States v. Burns*, 843 F.3d 679 (7th Cir. 2016)). Mr. Pelletier points to two district court cases from this circuit concluding that the fraudulent receipt of Social Security payments constitutes a series of individual offenses each subject to the statute of limitations, rather than a "continuing offense" which would authorize restitution beyond the statute of limitations period. *Id.* at 1-2 (citing *United States v. Bundy*, No. 2:08-cr-196-DBH-1, 2009 WL 902064, at *1 (D. Me. Mar. 31, 2009); *United States v. Powell*, 99 F. Supp. 3d 262, 264-65 (D.R.I. 2015)).

Finally, Mr. Pelletier argues that the Court can modify its previous order or re-sentence him because the Supreme Court has indicated that district courts retain their power to determine restitution amounts beyond the time limits imposed in 18 U.S.C. § 3664. *Id.* at 2 (citing *Dolan v. United States*, 560 U.S. 605 (2010)).

### B. Motion to Return Property

### 1. Michael Pelletier's Motion

Mr. Pelletier argues the Property was taken in connection with Count Four of the indictment, and is void because Count Four was dismissed. *Def.'s Forfeiture Mot.* at 1. He argues, citing Federal Rule of Criminal Procedure 41(g), that he "is entitled

to have his title restored or, alternatively, to monetary compensation equal to its current fair market value." *Id.*

## 2.     The Government's Response

The Government claims Mr. Pelletier may not challenge the forfeiture here and that Rule 41(g) does not apply because he must challenge the order on direct appeal within fourteen days of the order or not at all. *Gov't Forfeiture Opp'n* at 6-8 (citing FED. R. APP. P. RULE 4(b)(1)(A); *Griffin v. United States*, 2016 WL 7423057 (9th Cir. Dec. 23, 2016); *United States v. Cortes-Castro*, 2016 WL 1253845 (11th Cir. 2016); *United States v. Noyes*, 557 Fed. App'x. 125, 126-28 (3rd Cir. 2014); *Suggs v. United States*, 256 Fed. App'x. 804, 806 (7th Cir. 2007)).

The Government also argues that the Property was not forfeited under Count Four, but validly forfeited under Counts One and Two of the indictment because "[t]he evidence showed that $49,000 in criminal drug proceeds was used to buy and improve the Property." *Id.* at 7.

## C.     Motion for Sentence Reduction

## 1.     Michael Pelletier's Motion

Mr. Pelletier argues he is eligible for a sentence reduction under Amendment 782 to the Sentencing Guidelines, effective November 1, 2014, which allows a two-point reduction to the base offense level for his drug offenses. *Def.'s Sentence Mot.* at 1-2. He claims that the motion is proper at this time because "Congress has given district courts permission to entertain motions for sentence reductions through 18 U.S.C § 3582(c)(2)" and because the § 3553(a) factors weigh in his favor. *Id.*

## 2. The Government's Response

The Government responds that Mr. Pelletier is not eligible for a sentence reduction because 18 U.S.C. § 3582(c)(2) only authorizes district courts to reduce sentences "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." *Gov't Sentence Opp'n* at 1 (quoting 18 U.S.C. § 3582(c)(2)). The Government contends that where a defendant is sentenced based on a statutory mandatory minimum, as here, the sentence is not "based on" the guideline sentencing range and a district court is not authorized to reduce the sentence. *Id.* at 1-2.

## III. DISCUSSION

### A. Propriety of Mr. Pelletier's Penalties

The Court concludes that it properly imposed Mr. Pelletier's penalties at his original sentencing.

### 1. Propriety of the Restitution Amount

Under 18 U.S.C. § 3663A, "the court shall order . . . that the defendant make restitution to the victim of the offense . . . ." 18 U.S.C. § 3663A(a)(1). The term "victim" is defined as

> a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

*Id.* § 3663A(2). The Social Security Administration was "directly and proximately harmed as a result" of Mr. Pelletier's Social Security Fraud under 42 U.S.C. § 408(a)(4) described in Counts Thirteen, Fourteen, and Fifteen of the indictment. *See*

*Indictment* at 10-12.  Mr. Pelletier was found guilty of those counts, which charged conduct beginning July 1, 2004 and January, 2003.  *Id.*  The restitution amount likely includes payments received before those dates marking the start of the charged conduct, extending back perhaps as far as 1977.

Mr. Pelletier bases his argument on *United States v. Silkowski*, 32 F.3d 682 (2d Cir. 1994), which held that the five-year statute of limitations period limited the amount of restitution a court may order a defendant to pay to the Social Security Administration.  *Id.* at 690.  The Second Circuit, however, decided *Silkowski* before amendments to the restitution provisions enacted as the Mandatory Victim Restitution Act, which modified "the outer limits of a VWPA § 3663(a)(2) restitution order [to] encompass all direct harm from the criminal conduct of the defendant which was within any scheme, conspiracy, or pattern of activity that was an element of any offense of conviction."  *United States v. Hensley*, 91 F.3d 274, 277 (1st Cir. 1996).

The First Circuit has suggested that Congress "amended the statute in favor of broad restitution," but it has not specifically weighed in on whether this expansion in the availability of restitution allows a sentencing court to consider pre-statute of limitations conduct and amounts.  *United States v. Cronin*, 990 F.2d 663, 666 (1st Cir. 1993).  The weight of authority from other circuits, however, lies with the Government.  *See United States v. Williams*, 356 F. App'x 167, 170 (10th Cir. 2009) (agreeing with the district court's imposition of restitution based on the whole scheme, including parts which preceded the statute of limitations period); *United States v. Dickerson*, 370 F.3d 1330, 1342 (11th Cir. 2004) ("[W]e hold that where a

defendant is convicted of a crime of which a scheme is an element, the district court must, under 18 U.S.C. § 3663A, order the defendant to pay restitution to all victims for the losses they suffered from the defendant's conduct in the course of the scheme, even where such losses were caused by conduct outside of the statute of limitations"); *United States v. Bach*, 172 F.3d 520, 524 (7th Cir. 1999) (upholding restitution based on entire Ponzi scheme, even though only two mailings were within statute of limitations period); *United States v. Welsand*, 23 F.3d 205, 206 (8th Cir. 1994) (affirming restitution order based on ten-year scheme, despite five-year statute of limitations period); KATHARINE M. GOODWIN, FEDERAL CRIMINAL RESTITUTION § 5:16 ("Restitution can be imposed for acts beyond the statute of limitations, as long as the acts are part of the same scheme which underlies the offense of conviction").

The Court imposed Mr. Pelletier's restitution order under 18 U.S.C. § 371 and 42 U.S.C. § 408(a)(4). *Indictment* at 10-12 (ECF No. 1). Counts Thirteen, Fourteen, and Fifteen, for which he was convicted, consist of a scheme and a conspiracy to defraud the Social Security Administration. Therefore, the Court properly based the restitution amount on payments during the entire scheme, conspiracy, or pattern, not just those within the five-year statute of limitations period.

There is a second way that a defendant may be sentenced based on events preceding the statute of limitations period. The statute of limitations period does not necessarily prevent a court, when setting the amount of restitution, from including conduct outside the period if the crime was a "continuing offense." *See Toussie v. United States*, 397 U.S. 112, 114 (1970); *Powell*, 99 F. Supp. 3d at 264 ("Ordinarily,

acts occurring prior to [the statute of limitations date], would be barred, but an exception exists for offenses that are deemed 'continuing'"). Thus, in *United States v. Dupre*, 04 Cr. 267 (DLC), 2007 U.S. Dist. LEXIS 40039 (S.D.N.Y. Jun. 4, 2007), a district court concluded that the five-year statute of limitations in that case did not limit the "relevant period for restitution" because unlike *Silkowski*, "the defendants . . . were charged and convicted of continuing offenses, and therefore restitution is properly allowed for the entire period of their course of criminal conduct." *Id.* at *15.

Determining when an offense is "continuing" can be difficult. The Supreme Court noted that "the tension between the purpose of a statute of limitations and the continuing offense doctrine is apparent; the latter, for all practical purposes, extends the statute beyond its stated term." *Toussie*, 397 U.S. at 115. It has instructed that an offense should not be deemed a continuing one "unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *Id.*

There is a split of authority as to whether courts should focus on the nature of the crime in the abstract or also consider the particular circumstances of the defendant's conduct and whether the defendant engaged in a single continuing scheme. *See e.g. United States v. Yashar*, 166 F.3d 873, 879-80 (7th Cir. 1999) (holding that embezzlement under 18 U.S.C. § 666 is not a continuing offense regardless of the specific circumstances); *Silkowski*, 32 F.3d at 690 (holding that embezzlement under 18 U.S.C. § 641 was not a continuing offense regardless of the

specific circumstances of the case, and therefore payments outside the statute of limitations period could not be included in restitution order); *Powell*, 99 F. Supp. 3d at 265 (same); *contra United States v. Smith*, 373 F.3d 561, 566-68 (4th Cir. 2004) (holding that embezzlement under 18 U.S.C. § 641 was a continuing offense, at least in the circumstances of that case); *United States v. Trang Huydoan Phan*, 754 F. Supp. 2d 186, 190 (D. Mass. 2010) (same). Even absent a split of authority, Mr. Pelletier's citations to several of these cases would not decide the matter because he was convicted under different provisions than the defendants in those cases.

Applying for purposes of argument a more restrictive view of how a court is to determine whether a crime is a continuing offense, the Court concludes that its restitution order was proper. The Court imposed Mr. Pelletier's restitution order under 18 U.S.C. § 371 and 42 U.S.C. § 408(a)(4). *Indictment* at 10-12 (ECF No. 1). Section 371 prohibits conspiring to commit an offense against the United States or to defraud the United States, and § 408(a)(4) prohibits concealing or failing to disclose an event affecting the initial or continued right to receive Social Security payments.

The model for what constitutes a continuing offense is conspiracy. *See Toussie*, 397 U.S. at 122 (comparing the crime in question to conspiracy, and reasoning, "It is in the nature of a conspiracy that each day's acts bring a renewed threat of the substantive evil Congress sought to prevent"); *Yashar*, 166 F.3d at 875 ("The classic example of a continuing offense is a conspiracy, but other offenses such as escape or kidnapping also may fall within those definitions"); *United States v. McGoff*, 831 F.2d

1071, 1078 (D.C. Cir. 1987) ("The classic example of a continuing offense is conspiracy").

Although fewer courts have weighed in on the continuing nature of Social Security fraud under § 408(a)(4), those that have done so have all concluded it constitutes a continuing offense. *See e.g. Bundy*, 2009 WL 902064, at *12 (concluding that § 408(a)(4), "like the classic continuing offenses of conspiracy, escape, kidnapping, bigamy, and crimes of possession, by its nature continues in effect until affirmatively ended"); *United States v. Payne*, 978 F.2d 1177, 1180 (10th Cir. 1992) (reasoning that § 408(a)(7)(B) was not a continuing offense because Congress chose not to include a continuing duty to disclose, like it did in § 408(a)(4)); *United States v. Henrikson*, 191 F. Supp. 3d 999, 1005 (D.S.D. 2016) ("The crime of concealment of events affecting benefits, like the traditional continuing offenses of conspiracy and escape, continues until it is affirmatively ended."); *United States v. Perry*, No. CRIM. RDB-12-0173, 2012 WL 4356780, at *4 (D. Md. Sept. 21, 2012), aff'd, 757 F.3d 166 (4th Cir. 2014) (Section 408(a)(4) "constitutes a continuing offense"); *United States v. Morris*, No. 4:10-CR-00090-SWW-1, 2014 WL 2560617, at *5 (E.D. Ark. June 6, 2014) (18 U.S.C. §641 and 42 U.S.C. §408(a)(4) "were continuing offenses" and therefore, "there is no statute of limitations violation"); *United States v. Morrison*, 43 F.R.D. 516, 519 (N.D. Ill. 1967) ("the statute of limitations is inapplicable, because the concealment charged continued until . . . a date well within the five year period. Since the concealment of her mother's death constituted a continuing course of conduct, the statute began to run on the date the conduct ceased").

The Court is satisfied that the restitution due to the Social Security Administration properly included amounts preceding the five-year statute of limitation period because those earlier payments were part of the same scheme, conspiracy, or pattern and were part of the same continuing offense that persisted into the five-year period.

### 2.     Propriety of the Forfeiture

The Court understands Mr. Pelletier's confusion regarding the forfeiture of the Property, because one of the grounds for the criminal forfeiture was based on Count Four of the indictment, which was dropped at trial. Nevertheless, the jury made the necessary determination that the Property was "derived from proceeds that the Defendant obtained, directly or indirectly, as the result of his involvement in the controlled substances offenses alleged in Counts One and Two" of the indictment. *Verdict Form* at 1 (ECF No. 281). The Property was properly forfeited, and Mr. Pelletier had the opportunity to dispute that determination on direct appeal.

### B.     Finality of Mr. Pelletier's Penalties

Even if the Court did not conclude that the restitution and forfeiture orders were proper, it cannot grant Mr. Pelletier's motions because the penalties, like his term of imprisonment, were part of a final criminal judgment. The proper vehicle for Mr. Pelletier's current arguments was his 2008 direct appeal.

In addition to a term of imprisonment or probation, a criminal penalty can also consist of an order of restitution and forfeiture of property. The First Circuit has explained that "[t]he nature of restitution is penal and not compensatory." *United*

*States v. Rostoff*, 164 F.3d 63, 71 (1st Cir. 1999). Restitution "is not a civil affair; it is a criminal penalty meant to have deterrent and rehabilitative effects." *United States v. Savoie*, 985 F.2d 612, 619 (1st Cir. 1993); *see also United States v. Aguirre-Gonzalez*, 597 F.3d 46, 52 (1st Cir. 2010). ("Notwithstanding the general shift in the restitution statutes towards a more compensatory regime, the law in this circuit remains that 'restitution ordered as part of a criminal sentence is a criminal penalty, not a civil remedy'").

Similarly, "[c]riminal forfeiture is a form of punishment designed to 'divest the criminal defendant of the profits of the illegal activity for which he has been convicted.' As such, it is a part of the sentence rather than the substantive offense." *United States v. Ferrario-Pozzi*, 368 F.3d 5, 8 (1st Cir. 2004) (quoting *United States v. Gilbert*, 244 F.3d 888, 919 (11th Cir. 2001)) (internal citations omitted). A forfeiture order "is a part of the sentence . . . and becomes final for purposes of appeal when the court issues its judgment." *United States v. Derman*, 211 F.3d 175, 182 (1st Cir. 2000) (superseded by statute on other grounds) (citing *Libretti v. United States*, 516 U.S. 29, 38–39 (1995)).

The First Circuit recently summarized the "bedrock" law on the finality of criminal sentences in *United States v. Mercado-Flores*, 872 F.3d 25, 28 (1st Cir. 2017). "Subject to only a handful of narrowly circumscribed exceptions, a district court has no jurisdiction to vacate, alter, or revise a sentence previously imposed." *Id.* "When— as in this case—a judgment of conviction is entered upon imposition of a sentence, that sentence is a final judgment and, therefore, may only be modified by the

sentencing court in certain limited circumstances." *Id.* If none of these exceptions

applies, a criminal defendant's only avenues for review are direct appeal and § 2255

collateral attack. *Wilkins v. United States*, 754 F.3d 24, 28 (1st Cir. 2014). For

example, under Rule 36, a sentencing court "may at any time correct a clerical error

in a judgment, order, or other part of the record. . . ." FED. R. CRIM. P. 36. Indeed,

the Court used this mechanism twice immediately after sentencing, but the changes

Mr. Pelletier now seeks are not clerical errors. They are substantive modifications

based on alleged errors of law or on events occurring after his original sentencing.

Another example of the limited circumstances permitting a sentencing court to

reconsider a final criminal judgment is Rule 33, which allows a defendant to move to

vacate any judgment and request a new trial within 14 days, or within three years if

the motion is based on newly discovered evidence. FED. R. CRIM. P. 33. Mr. Pelletier's

motion is substantially beyond the time limits under Rule 33 and is not based on

newly discovered evidence.

In addition to the exceptions of Rule 33 and 36, there are several different

exceptions potentially applicable to Mr. Pelletier's three motions.

### 1. Exceptions to Finality of Restitution

As discussed above, the general framework on the finality of restitution orders

is the same as other forms of criminal punishment, namely, it is final after direct

appellate review unless one of a few specific exceptions applies. *See Bartelho v.*

*United States*, No. 15-1988, 2016 WL 9584199, at *1 (1st Cir. Dec. 8, 2016) ("As [the

Defendant] presents claims challenging only the legality of the original restitution

order on grounds that were available on direct review, we conclude that [the Defendant] has not established an entitlement to relief"); *Dolan v. United States*, 560 U.S. 605, 622 (2010) (Roberts, J., dissenting) ("These provisions authorize restitution orders at sentencing. They confer no authority to order restitution after sentencing has concluded. When Congress permits courts to impose criminal penalties at some time other than sentencing, it does so explicitly"). An order of restitution is a final judgment that may not be changed by the sentencing court unless it is: (1) corrected under Rule 35 of the Federal Rules of Criminal Procedure; (2) amended under 18 U.S.C. § 3664(d)(5); (3) adjusted under 18 U.S.C. § 3664(k), § 3572, or § 3613A; or (4) resentenced under 18 U.S.C. § 3565 or § 3614. 18 U.S.C. § 3664(o).

First, under Rule 35, a sentencing court may correct a sentence within fourteen days after sentencing if the sentence resulted from arithmetical, technical, or other clear error. FED. R. CRIM. P. 35(a). The First Circuit has "interpreted Rule 35(a)'s fourteen-day temporal window 'as imposing a jurisdictional limit on the district court's ability to correct a sentence.'" *Mercado-Flores*, 872 F.3d at 29 (quoting *United States v. Griffin*, 524 F.3d 71, 83 (1st Cir. 2008)). Even if the restitution amount reduction could be classified as an arithmetical, technical correction, or other clear error, the fourteen day time window has long since closed. The restitution order was imposed nearly ten years ago, and was not questioned for seven years. The sentencing court may also reduce a sentence "upon the government's motion" when a defendant, after sentencing, provides substantial assistance investigating or prosecuting another person. FED. R. CRIM. P. 35(b). This exception does not apply

because the Government has not moved for a sentencing reduction here and Mr. Pelletier makes no allegation of substantial assistance.

Second, under 18 U.S.C. § 3664(d)(5), a sentencing court may enter a final determination of a restitution amount up to ninety days after sentencing when the victim's losses were not ascertainable prior to sentencing, or when victims discover further losses after sentencing, they can petition the court for an amended restitution order within sixty days of the discovery of the further losses. Neither exception applies here, where it is the Defendant who seeks to reduce restitution, as opposed to a victim seeking to receive or increase restitution.

Third, under 18 U.S.C. § 3664(k), a sentencing court can "adjust the payment schedule, or require immediate payment in full, as the interests of justice require" if there has been a material change in the defendant's economic circumstances. Similarly, §§ 3572, 3573, and 3613A permit the sentencing court to adjust the payment schedule if circumstances change or in order to obtain compliance. None of these provisions applies here. Mr. Pelletier has not alleged changed circumstances, and he is not asking for a modified repayment schedule. He seeks a lower obligation, not a different schedule for satisfying that obligation.

Fourth, under 18 U.S.C. § 3565 and Rule 32.1, a sentencing court may revoke a sentence of probation or supervised release and resentence the defendant, Fed. R. Crim. P. 32.1, and under 18 U.S.C. § 3614, the court may resentence for failure to pay a fine or restitution. None of these exceptions to the finality rule applies here. Mr. Pelletier is not seeking resentencing following a violation of conditions of his prior

sentence. He is asking for a modification based on alleged errors. Furthermore, resentencing under § 3565 and § 3614 typically involves the imposition of a new penalty for intervening conduct, not reductions in the penalties in a previously imposed sentence, as Mr. Pelletier seeks here.

Contrary to Mr. Pelletier's assertions, *Dolan v. United States*, 560 U.S. 605, 608 (2010), does not undermine any of the preceding conclusions. In that case, the sentencing court made clear before sentencing that it would impose restitution, but did not specify the amount until several months after the expiration of the ninety-day deadline following sentencing described in 18 U.S.C. § 3664(d)(5). *Id.* at 609. The Supreme Court concluded that the ninety-day deadline represented a legally-enforceable, time-related directive but was not a "jurisdictional" deadline that deprives the sentencing court of the power to specify the restitution amount. *Id.* at 610-11. "We hold that a sentencing court that misses the 90–day deadline nonetheless retains the power to order restitution—at least where, as here, the sentencing court made clear prior to the deadline's expiration that it would order restitution, leaving open (for more than 90 days) only the amount." *Id.* at 608. It is one thing to say a sentencing court may retain jurisdiction to impose restitution for a few months beyond the 90-day statutory deadline; it is another thing entirely to say a sentencing court retains the power to reduce a restitution amount nearly ten years later.

Furthermore, an important factor in the *Dolan* Court's holding was the fact that to "read the statute as depriving the sentencing court of the power to order

restitution would harm those—the victims of crime—who likely bear no responsibility for the deadline's being missed and [for] whom the statute also seeks to benefit." *Id.* at 613-14. Here that justification cuts in the opposite direction. The Supreme Court interpreted the statutory deadline leniently in favor of those the statute was designed to protect, the victims, but Mr. Pelletier seeks to stretch the finality rules to protect himself at the expense of the victim. To give Mr. Pelletier the relief he seeks would invert and stretch the Supreme Court's holding beyond its limits.

### 2. Exceptions to Finality of Forfeiture

Mr. Pelletier seeks the return of the Property under Rule 41(g), despite the finality of the forfeiture order. Rule 41(g) provides:

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

FED. R. CRIM. P. 41(g). In applying Rule 41(g), the First Circuit has elaborated on the language of the rule and explained that:

> Once seized property is no longer needed as evidence, a criminal defendant is presumed to have the right to its return . . . However, a Rule 41(g) motion is properly denied if the defendant is not entitled to lawful possession of the seized property, the property is contraband or subject to forfeiture, or the government's need for the property as evidence continues.

*United States v. Cardona-Sandoval*, 518 F.3d 13, 15 (1st Cir. 2008) (quoting *United States v. Pierre*, 484 F.3d 75, 87 (1st Cir.2007)). The implication of this guidance that a 41(g) motion "is properly denied if . . . the property is . . . subject to forfeiture" is

that relief under Rule 41(g) is not available after the issuance of a forfeiture order. As the forfeiture order conclusively determined Mr. Pelletier's rights to the Property, the Court has no power to grant the relief he seeks.

The weight of authority from other circuit courts is consistent with this conclusion. *See e.g. Young v. United States*, 489 F.3d 313, 315 (7th Cir. 2007) ("a criminal forfeiture is part of the defendant's sentence and must be challenged on direct appeal or not at all"); *United States v. Sims*, 376 F.3d 705, 708 (7th Cir. 2004) (Rule 41(g) "can also be invoked after criminal proceedings have concluded to recover the defendant's property when the property is no longer needed as evidence—unless, of course, it has been forfeited in the course of those proceedings"); *United States v. De Los Santos*, 260 F.3d 446, 448 (5th Cir. 2001) (A[n] . . . order of forfeiture is a final judgment as to the rights of a defendant to forfeited property. . . The [appeal] is untimely because it was filed over two years after . . . Therefore, this court lacks jurisdiction over this appeal"); *United States v. Pelullo*, 178 F.3d 196, 202 (3d Cir. 1999) ("[T]he order of forfeiture entered at sentencing is a final order with respect to the defendant from which he can appeal. This rule is predicated on the assumption that a forfeiture order conclusively determines all of the defendant's interest in the forfeited property") (internal citations omitted); *United States v. Fitzen*, 80 F.3d 387, 389 (9th Cir. 1996) ("It is well-settled that the federal government may defeat a Rule 41([g])[1] motion by demonstrating that the property is subject to federal forfeiture").

---

[1] The original quotation referred to "Rule 41(e)" because at the time the Ninth Circuit decided *Fitzen*, the substance of the current subsection (g) was located at subsection (e). *See* FED. R. CRIM. P. 41 advisory committee notes.

### 3. Exceptions to Finality of Term of Imprisonment

A term of imprisonment may only be corrected by the sentencing court (1) under Rule 35 of the Federal Rules of Criminal Procedure or (2) pursuant to 18 U.S.C. § 3582(c). 18 U.S.C. § 3582(b)-(c).

Under Rule 35, a sentencing court may correct a sentence within fourteen days after sentencing if the sentence resulted from arithmetical, technical, or other clear error. FED. R. CRIM. P. 35(a). The First Circuit has "interpreted Rule 35(a)'s fourteen-day temporal window 'as imposing a jurisdictional limit on the district court's ability to correct a sentence.'" *Mercado-Flores*, 872 F.3d at 29 (quoting *United States v. Griffin*, 524 F.3d 71, 83 (1st Cir. 2008)). The sentencing court may also reduce a sentence "upon the government's motion" when a defendant, after sentencing, provides substantial assistance investigating or prosecuting another person. FED. R. CRIM. P. 35(b). Neither exception applies here. The change Mr. Pelletier now seeks is a major substantive reduction, not a correction for a clear error which occurred at the time of sentencing. The fourteen day time window also closed long ago. The Government has not moved for a sentencing reduction here.

Next, under 18 U.S.C. § 3582(c), a sentencing court may modify a term of imprisonment (1) upon the motion of the Director of the Bureau of Prisons for extraordinary and compelling reasons or for certain defendants over the age seventy who have served at least thirty years in prison, *id.* at § 3582(c)(1), or (2) when the sentence is "based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . ." *Id.* at § 3582(c)(2). Neither exception applies here.

The Director has not moved for a sentence reduction nor made the necessary findings. Although Mr. Pelletier points to Amendment 782 as a qualifying guideline range change, *Def.'s Sentence Mot.* at 1-2, this guideline change does not support his motion because his sentence was not imposed "based on a sentencing range" in the guidelines; rather, it was based on a statutory mandatory minimum. *See* 21 U.S.C. § 841(b)(1)(A). "Section 3582(c)(2) 'confers no power on the district court to reduce a minimum sentence mandated by statute.'" *United States v. Ganun*, 547 F.3d 46, 47 (1st Cir. 2008) (quoting *United States v. Dimeo*, 28 F.3d 240, 241 (1st Cir.1994)). In *Ganun*, a case very similar to Mr. Pelletier's, the First Circuit "conclude[d] that the district court lacked authority to grant [the defendant] his requested sentencing reduction pursuant to § 3582(c)(2) and the . . . amendment to the Sentencing Guidelines because he was serving a statutory mandatory minimum sentence."[2] *Id.*

Since none of the exceptions applies, the restitution, forfeiture, and term of imprisonment are all final and the Court may not modify them in these circumstances.

## IV. CONCLUSION

The Court DENIES the Motion to Reduce Restitution (ECF No. 758), the Rule 41(g) Motion for Return of Property (ECF No. 759), and the Motion for Sentence Reduction (ECF No. 767).

---

[2] *Ganun* involved the imposition of a ten-year mandatory minimum, not a life sentence, but the principle is the same.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 7th day of November, 2017