**UNITED STATES DISTRICT COURT
DISTRICT OF MAINE**

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.          )<br>)<br>MICHAEL PELLETIER        ) | 1:06-cr-00058-JAW |

**ORDER DENYING MOTION FOR TERMINATION OF SUPERVISED
RELEASE**

A supervisee convicted of engaging in a conspiracy to import and distribute marijuana moves for early termination of his supervised release on the ground that he wishes to smoke marijuana to treat his medical conditions. The Court denies his motion.

**I.  BACKGROUND**

**A.  Crimes and Punishment**

On July 19, 2007, on the sixth day of trial, a federal jury found Michael Pelletier guilty of twelve separate violations of federal criminal law, including drug trafficking, money laundering, structuring, and social security fraud. *Jury Verdict* (ECF No. 280). The jury found that the amount of marijuana associated with Mr. Pelletier's participation in the drug importation and distribution conspiracies was more than 1000 kilograms. *Id.* at 2. The penalty provision applicable to drug trafficking conspiracies where the quantity of marijuana was 1000 or more kilograms was 21 U.S.C. § 841(b)(1)(A)(vii). Section 841(b)(1)(A) also stated, "If any person commits a violation of this subparagraph . . . after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory

term of life imprisonment without release. . ..." As Mr. Pelletier had previously been convicted of four state drug trafficking felonies: two in 1994 and two in 2001, *Information* (ECF No. 181), Mr. Pelletier was subject to a mandatory term of life imprisonment on the drug trafficking conspiracies, which is what the Court imposed. *J.* (ECF No. 384). Specifically, on January 22, 2008, the Court sentenced Michael Pelletier to mandatory life imprisonment concurrent with four terms of two hundred forty months and six terms of one hundred twenty months, ten years of supervised release concurrent with ten three-year terms, no fine, $83,847.55 in restitution, and a $1200 special assessment. *Id.*

On January 29, 2008, Mr. Pelletier filed a notice of appeal. *Notice of Appeal by Michael Pelletier* (ECF No. 385). On December 1, 2011, the United States Court of Appeals for the First Circuit affirmed Mr. Pelletier's conviction and sentence. *J.* (ECF No. 664); *United States v. Pelletier*, 666 F.3d 1, 12 (1st Cir. 2011). The Court received the mandate of the First Circuit on December 28, 2011. *Mandate* (ECF No. 665). On May 29, 2012, the United States Supreme Court denied Mr. Pelletier's petition for a writ of certiorari, *Pelletier v. United States*, 566 U.S. 1023 (2012), and on August 31, 2012, the Supreme Court denied his petition for rehearing. *Pelletier v. United States*, 567 U.S. 964 (2012). Mr. Pelletier filed various unsuccessful post-conviction motions and two motions for compassionate release, and as of January 22, 2021, Mr. Pelletier's second motion for compassionate release was pending. *Def.'s Mot. for Compassionate Release* (ECF No. 824).

### B. Presidential Commutation

On January 19, 2021, then President Donald J. Trump exercised his presidential commutation authority and commuted Mr. Pelletier's incarcerative sentence. *Executive Grant of Clemency* at 1 (ECF No. 858). President Trump's commutation reads:

> **I HEREBY COMMUTE** the total sentence of imprisonment each of the following named persons is now serving to time served, leaving intact and in effect for each named person the term of supervised release imposed by the court with all its conditions and all other components of each respective sentence:
>
> **Michael Pelletier**          Reg. No. 11109-036

*Id*. President Trump's commutation released Mr. Pelletier from his incarcerative sentence but retained his term of supervised release and the other components of his sentence. *Id*. Upon his release from federal prison, he was still subject to ten years of supervised release concurrent with ten three-year terms, $83,847.55 in restitution, and a $1200 special assessment. *J*. at 4-6.

## II.   MOTION FOR EARLY TERMINATION

### A.   Michael Pelletier's Motion

On July 11, 2022, Mr. Pelletier filed a pro se motion to terminate his supervised release. *Mot. for Early Termination of Supervised Release* (ECF No. 861). Mr. Pelletier notes that he is paraplegic and has been since age eleven when he was injured in a farm accident. *Id*. at 2. Upon his release, he moved to his brother's home in Fort Worth, Florida, where significant renovations were necessary to accommodate his wheelchair. *Id*. Mr. Pelletier explains that he is subject to chronic infection due

to the use of his catheter, and he states that "Doctors have also suggested the use of medical marijuana for treatment of some of his conditions." *Id.* However, Mr. Pelletier acknowledges that marijuana is a Schedule I narcotic and proscribed by the terms of his supervised release. *Id.* Mr. Pelletier says that he receives social security disability benefits, which along with social security benefits, allow him to be self-sufficient along with assistance from his family. *Id.* He says that the terms of his supervised release require payment of restitution, which would take a significant portion of his income. *Id.* Mr. Pelletier gardens, does the laundry, and performs home maintenance within the limits of his physical capacity. *Id.*

Mr. Pelletier contends that he has "complied with all requirements of his supervised release." *Id.* at 3. He avers that at age sixty-six, he is "statistically unlikely to commit any crimes." *Id.* He points to "significant support" from his family, from The Human Solution International, and other advocacy groups, and he represents that he "will continue to comply with all social norms." *Id.*

Mr. Pelletier argues that it is "beyond cavil" that "the use of marijuana would replace the use of many prescription drugs he now uses." *Id.* He says that his healthcare providers recommend this treatment but acknowledges marijuana is not available to him during his period of supervised release. *Id.* He says that travel to undergo drug testing and to comply with other supervised release requirements is difficult for him. *Id.* Mr. Pelletier maintains that there is "no pen[o]logical goal" to continued supervised release and notes that the one-year period during which a court

4

may not terminate supervised release early expired on January 21, 2022. *Id.* He concludes that early termination would be "fair and just." *Id.*

### B. The Government's Opposition

The Government filed its opposition on July 27, 2022. *Obj. to Def.'s Mot. for Early Termination of Supervised Release* (ECF No. 862). In its opposition, the Government notes that the United States Probation Office has objected to early termination and the Government supports the position of the Probation Office. *Id.* at 1. The Government's objection is based on 1) his lengthy criminal history, 2) his past failure to respond to rehabilitation efforts, 3) his unmet restitution obligation, and 4) his request is grounded on his desire to use marijuana, and his federal drug conviction was occasioned by his importation and distribution of marijuana, the very drug he now seeks to use. *Id.* at 1-3.

## III. LEGAL STANDARD

Once a defendant has served one year of supervised release, under 18 U.S.C. § 3583(e)(1), a court is authorized to terminate the remaining period of supervised release and discharge the person released "if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." The statute states that a court "may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7), terminate a term of supervised release . . .." 18 U.S.C. § 3583(e)(1). These factors include the "nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), to "afford adequate deterrence to criminal

5

conduct," *id.* § 3553(a)(2)(B), to "protect the public from further crimes of the defendant," *id.* § 3553(a)(2)(C), the "applicable category of offense committed by the applicable category of defendant," *id.* § 3553(a)(4), the "pertinent policy statement" of the Sentencing Commission, *id.* § 3553(a)(5), the "need to avoid unwarranted sentencing disparities," *id.* § 3553(a)(6), and the "need to provide restitution to any victims." *Id.* § 3553(a)(7).

Because Mr. Pelletier failed to meet both standards, the Court does not resolve whether mere compliance with the terms of supervised release in a specific case may be enough to order early termination or whether something more is necessary. *Compare United States v. Seger*, No. 1:98-cr-00065-JAW, 2014 U.S. Dist. LEXIS 151558, at *17 (D. Me. Oct. 27, 2014); *with United States v. Harris*, 258 F. Supp. 3d 137, 149-50 (D.D.C. 2017). Some courts require a defendant to demonstrate changed circumstances, such as exceptionally good behavior. *See United States v. Hawatmeh*, No. LA CR 08-00385-VBF-3, 2014 U.S. Dist. LEXIS 188084, at *11 (C.D. Cal. Sept. 19, 2014). Others have not. *United States v. Shaw*, 445 F. Supp. 3d 1160, 1166 (D. Colo. 2020) (declining to require "exceptional behavior" before terminating a term of supervised release because neither 18 U.S.C. § 3583(e)(1) nor 18 U.S.C. § 3553(a) textually imposes that requirement).

It strikes the Court that a judicial decision to terminate a term of supervised release is too case-specific to draw hard rules beyond the statutory language for what is essentially a discretionary decision. Consistent with its prior rulings, "in the Court's view, 'compliance with the terms and conditions of . . . supervised release,

6

though laudable, is generally not grounds for early termination.'" *United States v. Farmer*, No. 1:05-cr-00088-JAW, 2015 U.S. Dist. LEXIS 145925, at *6 (D. Me. Oct. 28, 2015) (quoting *Seger*, 2014 U.S. Dist. LEXIS 151558, at *17). A general rule is only generally applicable. In a given case, a defendant may have complied with the terms of his release, but his prior conduct and background may compel ongoing supervision because, for example, the nature of the crime presents a significant risk to a vulnerable population; however, a different defendant with a different criminal and personal history may make the case for early termination by compliance alone.

The statute requires a court to consider the factors listed in § 3553(a), and it imposes twin overarching requirements: that the court evaluate the "conduct of the defendant released" and the "interest of justice." 18 U.S.C. § 3583(e)(1). What seems clear is that the defendant bears the burden of proving entitlement to early termination of supervised release. *See United States v. Weber*, 451 F.3d 552, 559 n.9 (9th Cir. 2006). In this case, Mr. Pelletier has failed to demonstrate that his post-release conduct is beyond mere compliance or that the interest of justice favors early termination.

### IV.   DISCUSSION

Balancing the statutory factors under § 3553(a) and taking into consideration the Defendant's post-release conduct, his proffered reason for early termination, and the interest of justice, the Court concludes that Mr. Pelletier failed to sustain his burden for early termination of supervised release.

The Court turns to the statutory criteria of § 3553(a). The Court very well recalls Mr. Pelletier, his trial, and the case in general; to assess the nature and circumstances of his offenses and his history and characteristics, the Court re-reviewed Mr. Pelletier's PSR revised on November 20, 2007. *Presentence Investigation Report* (PSR). From 2003 to 2006, Mr. Pelletier was deeply engaged in a series of criminal activities. He was the leader and prime mover of a complex and multi-layered marijuana importation and distribution conspiracy from January 2003 to March 2006, operating from the Saint John River Valley, smuggling enormous quantities of marijuana across the Canadian border, and distributing it throughout the state of Maine. *PSR* ¶ 3. At least nine[1] individuals were involved in the conspiracy, with some distributing the marijuana to individual customers. *Id.* In addition to smuggling marijuana into the United States, Mr. Pelletier either personally or by direction, smuggled the cash proceeds into Canada. *Id.* ¶ 4. The Pelletier conspiracy was prolific, distributing between 1,320 and 2,320 pounds of marijuana. *Id.* ¶ 6, 8. Mr. Pelletier garnered considerable profits. One witness said that he paid $1000 per pound for Canadian marijuana and sold it for $2,200 per pound. *Id.* ¶ 7. On this assumption, Mr. Pelletier cleared over $1,500,000 in illegal proceeds during his leadership of the Pelletier conspiracy.

---

[1] The PSR mentions Anthony Caparotta, Ben Dionne, John Pascucci, Raymond Fogg, and Michael Easler as related cases. *PSR* at 1. The body of the PSR refers to Adam Hafford and Ricky Daigle as others involved in aspects of Mr. Pelletier's criminality. *Id.* ¶¶ 7-8, 13. According to the PSR two women, his then girlfriend and one of his sisters-in-law, were involved in the marijuana conspiracy but not prosecuted. *Id.* ¶ 9.

Despite the enormous amounts of cash Mr. Pelletier generated as a result of his marijuana conspiracy, Mr. Pelletier committed a long-term fraud against the Social Security Administration, receiving social security benefits and failing or refusing to report his substantial illegal income. *Id.* ¶ 14. The Social Security Administration calculated the total amount of improperly paid benefits to equal $83,847.55. In addition to leading this marijuana importation and distribution conspiracy, Mr. Pelletier committed acts of money laundering, attempting to hide his ill-gotten gains in investments in real estate and automobiles. *Id.* ¶ 12.

The Guideline calculations in the PSR confirmed the vast scope of the Pelletier conspiracy and the enormous amount of marijuana he imported and distributed, *id.* ¶ 19, his money laundering, *id.* ¶ 20, and his leadership role in the Pelletier conspiracy. *Id.* ¶ 22.

Turning to his history and characteristics, Mr. Pelletier was born in Edmunston, New Brunswick, Canada, and grew up in Madawaska, Maine in a large family. *Id.* ¶ 55. When he was eleven years old, he suffered a tragic tractor accident, which caused a severed spine and rendered him permanently paraplegic. *Id.* ¶ 57. Mr. Pelletier left high school in the 10th grade and later obtained his GED. *Id.* ¶ 60. After high school, Mr. Pelletier obtained training in watch and jewelry repair. *Id.* Mr. Pelletier has some remote work history, but he has spent most of his life on social security disability. *Id.* ¶ 61. Mr. Pelletier abused marijuana and cocaine. *Id.* ¶ 59.

Mr. Pelletier's most notable characteristic is his criminal history. It is unusual that his first criminal conviction occurred when he was thirty-six for unlawful

9

trafficking in scheduled drugs and aggravated trafficking or furnishing scheduled drugs. *Id.* ¶ 42. On June 27, 2000, he was sentenced in state court to seven years of incarceration, all but four years suspended. *Id.* Also, at thirty-six years of age, Mr. Pelletier was convicted of tampering with a witness and was sentenced to two and one-half years, all but one and one-half years suspended. *Id.* ¶ 43. At age forty-two, he was convicted of receiving stolen property and received a sixty-day sentence. *Id.* ¶ 44. At age forty-four, he received his second felony conviction for drug trafficking. *Id.* ¶ 45. He was sentenced to five years of incarceration. *Id.* At age forty-seven, he was convicted of disorderly conduct and refusing to sign a summons and received a ninety-day concurrent sentence. *Id.* ¶ 46. At age forty-eight, Mr. Pelletier was convicted of two violations of conditions of release and was sentenced to 120 days of incarceration. *Id.* ¶¶ 47-48. At age forty-nine, Mr. Pelletier was convicted of unlawful possession of a scheduled drug and was sentenced to 364 days of incarceration. *Id.* ¶ 49. With this criminal history, Mr. Pelletier had a criminal history category of VI when he was convicted of twelve new crimes for which he is now on supervised release. *Id.* ¶ 54.

The Social Security Administration is a victim to his social security fraud offenses and the Court ordered Mr. Pelletier to pay restitution to the Social Security Administration in the amount of $83,847.55. *J.* at 6; *PSR* ¶ 73. In his motion, Mr. Pelletier acknowledges that he owes restitution and says that he has complied with all the terms of his supervised release. *Def.'s Mot.* at 2-3. The Government says that

Mr. Pelletier has made only two payments toward his restitution obligation, the last being in August 2021. *Gov't's Opp'n* at 3.

Regarding unwarranted sentencing disparities, as noted earlier, at least seven individuals were federally prosecuted due to their involvement in aspects of Mr. Pelletier's criminality. Each was convicted, sentenced to terms of incarceration, followed by periods of supervised release. Each of Mr. Pelletier's accomplices served out the full term of supervised release. None was terminated early.

In addition to these factors, Mr. Pelletier mentions his paraplegia, his chronic infections, and his many prescriptive medications, but he fails to list those medications. *Def.'s Mot.* at 2-3. Mr. Pelletier was subject to chronic infections when he was sentenced and was treated with antibiotics. *PSR* ¶ 57. The only prescriptive medication Mr. Pelletier was taking at his sentencing hearing was Naprosyn, a non-steroidal anti-inflammatory drug. *Id.* Although Mr. Pelletier says that it is "beyond cavil" that the use of marijuana would replace his current medications, the Court is unaware of any scientific evidence, even among marijuana's most ardent advocates, that marijuana is effective as an antibiotic. Although some might argue that marijuana is an effective anti-inflammatory medicine, the Court does not know if Mr. Pelletier is still taking an anti-inflammatory prescriptive medicine and Mr. Pelletier has not presented any scientific evidence to support his view of the medicinal value of marijuana to treat his medical conditions. If Mr. Pelletier could make a case that marijuana would properly replace his current medicines, he has not made it.

The last and most significant issue cannot be stated without some irony. Mr. Pelletier was convicted of twelve federal felonies leading to his supervised release, but the most serious involved his leadership of an extensive conspiracy to import and distribute marijuana. It was the enormous quantity of marijuana together with his multiple prior state felony convictions for drug trafficking that subjected him to a mandatory sentence of life imprisonment. *PSR* ¶ 63. Mr. Pelletier now seeks early termination of his supervised release to use the very drug he was illegally trafficking. As Mr. Pelletier acknowledges, even though state laws against the use and sale of marijuana have eased, federal law continues to treat marijuana as a Schedule I drug. 21 U.S.C. § 812, Schedule 1 (c)(10). It is illegal under federal law not only to distribute marijuana, 21 U.S.C. § 841(b), but also to possess it. 21 U.S.C. § 844(a). Possession of marijuana is therefore a federal crime. *United States v. Johnson*, Crim. No. 10-10087-NMG, 2022 U.S. Dist. LEXIS 143364, at *4 (D. Mass. Jul. 8, 2022).

Nor does federal law recognize marijuana as medicinal. In denying a supervisee's request that his conditions of supervised release be amended to allow the medicinal use of marijuana, the District Court of Massachusetts recently addressed this very issue:

> [A]s a Schedule I drug, marijuana "has no currently acceptable medical use in treatment in the United States" under federal law. 21 U.S.C. § 812(b)(1) (defining the characteristics of a Schedule I controlled substance); *see also Gonzalez v. Raich*, 545 U.S. 1, 14 (2005) ("By classifying marijuana as a Schedule I drug . . . the manufacture, distribution, or possession of marijuana became a criminal offense, with the sole exception being use of the drug as part of an [FDA] preapproved research study." (citations omitted)). Hence, marijuana cannot be dispensed under a prescription from a licensed medical practitioner. *See* 21 U.S.C. § 829 (authorizing prescriptions of controlled substances listed

12

> on schedules other than Schedule I); *United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 492 n.5 (2001) ("Unlike drugs in other schedules, *see* § 829, schedule I drugs cannot be dispensed under a prescription"). The Supreme Court has held that changes in state law that de-criminalize marijuana and/or permit its medical and recreational use do not impact the federal prohibition on possession of marijuana. *See Gonzalez*. 545 U.S. at 27 ("[T]he fact that marijuana is used 'for personal medical purposes on the advice of a physician' cannot serve as a distinguishing factor. The CSA designates marijuana as contraband for *any* purpose[.]" (emphasis in original) (citation omitted)).

*Id.* at *4-5. Thus, Mr. Pelletier, a federal supervisee, proposes that his supervised release be terminated early so that he can commit new federal crimes. Mr. Pelletier's petition is a non-starter.

Supervised release "is a punishment in addition to incarceration, served after completion of the prison term." *United States v. Martin*, 363 F.3d 25, 35 n.17 (1st Cir. 2004). Supervised release is also "intended to facilitate 'the integration of the violator into the community, while providing the supervision designed to limit future criminal conduct.'" *United States v. Joseph*, 109 F.3d 34, 38-39 (1st Cir. 1997) (quoting U.S.S.G. Ch. 7, Pt. A, comment n.4). Based on the nature and circumstances of his multiple federal offenses, his history and characteristics, including his extensive criminal record, and his stated desire to violate federal law upon termination of his supervised release, Mr. Pelletier has not sustained his burden of proof to demonstrate that the purposes of supervised release have been fulfilled in his case.

## V.   CONCLUSION

The Court DENIES Defendant's Motion for Early Termination of Supervised Release (ECF No. 861).

SO ORDERED.

                                      /s/ John A. Woodcock, Jr.
                                      JOHN A. WOODCOCK, JR.
                                      UNITED STATES DISTRICT JUDGE

Dated this 25th day of August, 2022